**SHAKOPEE MDEWAKANTON SIOUX COMMUNITY, a federally recognized Indian Tribe; Little Six, Inc., a corporation chartered by the Shakopee Mdewakanton Sioux Community, Appellants,**

v.

**Anthony J. HOPE, in his capacity as Chairman of the National Indian Gaming Commission; Jana McKeag, in her capacity as Commissioner of the National Indian Gaming Commission; National Indian Gaming Commission, a Commission established within the United States Department of the Interior, Appellees.**

The LOWER SIOUX INDIAN COMMU-NITY IN MINNESOTA, Appellant,

v.

NATIONAL INDIAN GAMING COMMIS-SION; Janet Reno * Attorney General of the United States, Appellees.

SISSETON–WAHPETON SIOUX TRIBE, Appellant,

v.

UNITED STATES of America; Janet Reno, in her capacity as Attorney General of the United States, Appellees.

Nos. 92–2954, 92–3056 and 92–3312.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1993.

Decided Feb. 9, 1994.

Counsel who presented argument on behalf of the appellant Sisseton–Wahpeton Sioux Tribe was Bertram E. Hirsch of Floral Park, New York.

Counsel who presented argument on behalf of the appellants Shakopee Mdewakanton Sioux Community and Little Six, Inc., was William J. Keppel of Minneapolis, Minnesota. Kurt V. BlueDog of Bloomington, Minnesota, and James E. Townsend and Steven M. Christenson of Minneapolis, Minnesota, appeared on the brief.

Counsel who represented appellant Lower Sioux Indian Community was John E. Jacobson of Minneapolis, Minnesota.

Counsel who presented argument on behalf of the appellee was Edward J. Shawaker, U.S. Department of Justice, Washington, DC. Robert M. Small, Assistant United States Attorney, Minneapolis, Minnesota, Robert A. Mandel, Assistant United States Attorney, Rapid City, South Dakota, and

* Janet Reno is substituted for former Attorney General William Barr as appellee in this action pursuant to Fed.R.App.P. 43(c).

John A. Bryson, U.S. Department of Justice, Washington, DC, appeared on the brief.

Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BEAM, Circuit Judge.

The Shakopee Mdewakanton Sioux Community, Little Six, Inc., the Lower Sioux Community, and the Sisseton–Wahpeton Sioux Tribe, (collectively "the Tribes") appeal three decisions upholding regulations drafted by the National Indian Gaming Commission ("the Commission") which classify Keno as a Class III game under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721 (1988). We affirm.

## I. BACKGROUND

In 1988, Congress passed IGRA and created the Commission. Under IGRA, gaming on Indian land is divided into three categories. Class I gaming includes social games and traditional forms of Indian gaming connected to tribal ceremonies or celebrations. 25 U.S.C. § 2703(6). Indian Tribes have exclusive jurisdiction to regulate class I gaming. 25 U.S.C. § 2710(a). Class II gaming consists of bingo, "games similar to bingo," and certain card games.[1] 25 U.S.C. § 2703(7). Class II gaming is regulated by the Commission and because the Commission has exclusive regulatory authority, Tribes need not negotiate a tribal-state compact in order to offer class II gaming. 25 U.S.C.

§ 2710(b). All other gaming is considered class III gaming and is regulated by the individual states. 25 U.S.C. §§ 2703(8), 2710(d). Tribes that wish to offer class III gaming may do so only pursuant to a tribal-state compact.

IGRA established the Commission to regulate Indian gaming, and specifically authorized the Commission to promulgate regulations and guidelines necessary to implement the provisions of the Act. See 25 U.S.C. §§ 2704, 2706(b)(10). In April 1992, the Commission issued regulations classifying keno as class III gaming under section 2703. The Tribes sued to enjoin enforcement of these regulations claiming that keno should be a class II game. The district court applied the doctrine of deference to agency rulemaking enunciated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) and granted summary judgment to the Commission. The Tribes appeal.

## II. DISCUSSION

On appeal, the Tribes contend that the Commission's decision to classify keno as a class III game is arbitrary and capricious. The Tribes also argue that the district courts' decisions violate the canon of statutory construction requiring that courts construe statutes concerning the various Indian Tribes in favor of the Tribes, 798 F.Supp. 1399.[2]

---

1. 25 U.S.C. § 2703(7) defines class II gaming as:

   (A)(i) The game of chance commonly known as bingo (whether or not electronic, computer or other technologic aids are used in connection therewith)—
   (I) which is played for prizes, including monetary prizes, with cards bearing numbers or other designations,
   (II) in which the holder of the card covers such numbers or designations when objects, similarly numbered or designated, are drawn or electronically determined, and
   (III) in which the game is won by the first person covering a previously designated arrangement of numbers or designations on such cards,
   including (if played in the same location) pull-tabs, lotto, punch boards, tip jars, instant bingo, and other games similar to bingo, . . . .

   (B) The term "class II gaming" does not include—
   (i) any banking card games, including baccarat, chemin de fer, or blackjack (21), or
   (ii) electronic or electromechanical facsimiles of any game of chance or slot machines of any kind.

2. The Sisseton–Wahpeton Sioux Tribe also challenges the district court's determination that its "pick bingo" complaint is not yet ripe for judicial review. We agree with the district court. The Commission has yet to decide the manner in which its regulations will be applied to pick bingo. On the facts before us, we are not convinced that the Commission's decision to classify keno as class III gaming automatically means that pick bingo is class III gaming. Pick bingo seems to be a hybrid of keno and bingo, and its classification is for the Commission to decide in the first instance.

## A. Chevron Deference

■ In *Chevron*, the Supreme Court detailed the test that a court must employ when reviewing agency decisions which apply or interpret the statute that the agency administers. The *Chevron* test has two parts. A reviewing court must first determine whether congressional intent is clear from the plain language of statute. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781. If analysis of the statutory language does not yield an unambiguous congressional intent, the court must then look to the legislative history. *Id.* When this expanded analysis reveals a clear congressional intent, an agency interpretation of the statute contrary to that intent is not entitled to deference. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988). However, if the language of the statute is ambiguous, and the legislative history reveals no clear congressional intent, a reviewing court must defer to a reasonable agency interpretation of the statutory provision. *See Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781.

■ We find the term game "similar to bingo" in section 2703(7)(A)(i) of IGRA to be ambiguous. Our review of the legislative history does not reveal any clear congressional intent to include keno as a game "similar to bingo." On the contrary, keno was rarely mentioned during congressional deliberations, and nothing in the legislative history evinces a clear congressional intent with regard to the classification of keno under the statute.[3] Having concluded that Congress expressed no clear intent for the classifica-

tion of keno, we turn to the second part of our *Chevron* analysis: consideration of whether the Commission acted arbitrarily by classifying keno as class III gaming.[4]

## B. Standard of Review

■ The Tribes devote a great deal of energy to the contention that the Commission acted arbitrarily and capriciously when it concluded that keno was not a game "similar to bingo." The briefs elaborate the common history of keno and bingo in an attempt to demonstrate the close relationship between the two games. If this court were empowered to weigh evidence or to review the Commission's determination de novo, we might well be persuaded. However, review of the Commission's decision under *Chevron* is narrow. Unless we find the Commission's classification of keno to be impermissible, we must uphold the Commission's interpretation of the ambiguous statutory provision. *Good Samaritan Hosp. v. Shalala*, —— U.S. ——, ——, 113 S.Ct. 2151, 2159, 124 L.Ed.2d 368 (1993).

The Commission classified keno as class III gaming because keno is a house banking game.[5] The Tribes contend that in light of the avowed purpose of the statute to increase Tribal economic development and Tribal self-sufficiency, this classification is arbitrary and capricious. The Tribes point out that it is a tenet of statutory construction that "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit."[6] *South Dakota v. Bour-*

---

**3.** The Tribes rely on the fact that one rejected version of IGRA expressly excluded keno from class II gaming. We do not think that the deletion of proposed statutory language, standing alone, can constitute a clear congressional intent.

**4.** The Tribes further suggest that *Chevron* deference should not be extended to an administrative agency as newly formed as the Commission, because such an agency cannot have developed the specialized expertise *Chevron* contemplates. We cannot accept this proposition. The Commission is the agency created by Congress to address these questions. We cannot lightly replace their judgment with our own, regardless of the experience of the agency.

**5.** 25 C.F.R. § 502.4 states in relevant part:

Class III gaming means all forms of gaming that are not class I gaming or class II gaming, including but not limited to:

(a) Any house banking game, including but not limited to—

. . . .

(2) Casino games such as roulette, craps, and keno.

**6.** We note that the notion of interpreting a statute "in favor of the Indian Tribes" is problematic in a case like this. The Commission concluded that classifying keno as class III gaming protected Indian gaming from corrupting influences. The Tribes themselves, however, vigorously reject the contention that such an interpretation is "in favor of the Indian Tribes." The reviewing court is left with the dilemma of what exactly "in favor of the Indian Tribes" means.

*land*, ── U.S. ──, ──, 113 S.Ct. 2309, 2316, 124 L.Ed.2d 606 (1993) (citations omitted). In making this argument, the Tribes ignore the dual purpose behind IGRA. IGRA has as its avowed purposes:

> (1) to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments;

> (2) to provide a statutory basis for the regulation of gaming by an Indian tribe adequate to shield it from organized crime and other corrupting influences, to ensure that the Indian tribe is the primary beneficiary of the gaming operation, and to assure that gaming is conducted fairly and honestly by both the operator and players.

25 U.S.C. § 2702.[7]

In an attempt to effectuate the second purpose of the statute, and to shield Indian gaming from corruption, the Commission drew a bright line between house banking games and other types of gaming. We cannot find this decision to be counter to the requirement that statutes be interpreted in favor of the Indian Tribes. The balance to be struck between competing statutory purposes is exactly the sort of determination that is best left to agency discretion.

The Tribes do not suggest that the Commission refused to hear evidence concerning the common history of keno and bingo. Nor is there any evidence that the Commission otherwise abused the rulemaking process. To the contrary, the Commission conducted public hearings and solicited comments before promulgating rules under its statutory authority. *See* 56 Fed.Reg. 56278 (Nov. 1. 1991).[8] Therefore, the Tribes contentions boil down to an argument that the Commission made an incorrect decision. In light of the Commission's thorough consideration of the issues raised by the Tribes, we cannot conclude that the Commission acted arbitrarily simply because it reached a disfavored result. We need not be persuaded that an agency reached the best possible decision in order to uphold reasonable agency action.

## III. CONCLUSION

For the reasons stated above, the rulings of the district court are affirmed.

---

In this case, the Commission has considered the welfare of Indian Tribes in applying the statute, and has effectuated a clear statutory purpose drafted with the interests of the Indian Tribes in mind. Therefore, on the facts of this case, the Commission has satisfied the requirement that statutes be interpreted "in favor of the Indian Tribes" even though the Tribes contest the agency determination.

7. The third avowed purpose of IGRA was to create the Commission.

8. The Commission requested comments "specifically directed to identifying games which may be considered ["similar to bingo"] along with supporting documentation. The Commission is interested in identifying games which are similar to bingo." 56 Fed.Reg. 56278.